# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### BIG STONE GAP  DIVISION

| | | |
|---|---|---|
| **JAMES M. STANLEY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:09CV00069 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | By:  James P. Jones |
| **COMMISSIONER OF** | ) | United States District Judge |
| **SOCIAL SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Lewey K. Lee and Jason Mullins, Lee & Phipps, P.C., Wise, Virginia, for Plaintiff; Eric P. Kressman, Regional Chief Counsel, Region III, Patricia A. Stewart, Assistant Regional Counsel, and Charles Kawas, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, Philadelphia, Pennsylvania, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

## I

Plaintiff James Stanley filed this action challenging the final decision of the Commissioner of Social Security (the "Commissioner") denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") pursuant to titles II and XVI of the Social Security Act ("Act"), 42 U.S.C.A. §§

401-433, 1381-1383d (West 2003 & Supp. 2010). Jurisdiction of this court exists pursuant to 42 U.S.C.A. §§ 405(g) and 1383(c)(3).

Stanley filed for benefits on May 4, 2006, alleging disability since April 28, 2006, due to a combination of high blood pressure, depression, obesity, hypertension, and dyslexia. Stanley alleged that these impairments were negatively impacted by limited education, an inability to read and write, and borderline retardation. Stanley had previously asserted these claims in an application for disability filed in July 2004, the denial of which this court affirmed in November 2007. Stanley's current claim asserts disability from the effective date of the ALJ's prior denial onwards.[1] This second claim was denied initially and upon reconsideration. Stanley received a hearing before an administrative law judge ("ALJ"), during which Stanley, represented by counsel, and a vocational expert ("VE") testified. The ALJ denied Stanley's claim, and the Social Security Appeals Council denied his Request for Reconsideration. Stanley then filed his Complaint with this court, objecting to the Commissioner's final decision.

The parties have filed cross motions for summary judgment and have briefed and argued the issues. The case is ripe for decision.

---

[1] Stanley filed his current application alleging disability since April 20, 2003. Stanley's prior application for benefits was denied by an ALJ on April 27, 2006. This court affirmed the Commissioner's final decision finding that Stanley was not disabled under the Act. *Stanley v. Astrue*, No. 2:06CV00061, 2007 WL 4224734 (W.D. Va. Nov. 28, 2007). Stanley subsequently amended his onset date to April 28, 2006.

## II

Stanley was 28 years old when he filed for benefits, making him a younger person under the regulations. 20 C.F.R. § 404.1563(c) (2010). Stanley obtained a seventh grade level of education through special education programs, but has never learned to read or write. He has worked in the past on an automobile assembly line. Stanley has not engaged in substantial gainful activity since 2006.

James A. Bell, M.D., of the Western Lee County Health Clinic, treated Stanley from September 2004 through February 2007 for a variety of physical and mental impairments. Dr. Bell opined that Stanley suffered from hypertension, gastrointestinal reflux disease ("GERD"), obesity, depression, and dyslexia. In November 2004, Dr. Bell noted that Stanley's low level of education and inability to read or write, coupled with his medical conditions, would render him unable to work. Dr. Bell prescribed medications for Stanley's hypertension, GERD, and depression, which somewhat improved his conditions. In 2006 and 2007, Dr. Bell saw Stanley for follow-up appointments and treated him for the flu, blood pressure and GERD control, and an injury to his ankle. Dr. Bell noted Stanley's continued diagnoses of gastroenteritis, hypertension, obstructive sleep apnea, nasal CPAP, GERD, and major depressive disorder. A sleep study conducted on referral from Dr. Bell revealed severe sleep apnea, but that Stanley responded well to CPAP treatment.

In addition to his treatment from Dr. Bell, Stanley also received outpatient mental health treatment in 2005 at the Scott County Mental Health Center ("SCMHC") and from Robert S. Spangler, M.D.  Records indicate Stanley was assessed with a global assessment of functioning ("GAF") score of 45, indicating serious impairments. [1]  Further intelligence scale and IQ testing revealed low to borderline retarded intelligence.  Dr. Spangler also completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on Stanley in October 2005 and found him to be seriously limited in multiple areas.

Follow-up appointments at SCMHC with James M. Turnbull, M.D., revealed that Stanley was diagnosed with major depressive disorder and obsessive/compulsive disorder.  Stanley returned to Dr. Turnbull approximately every three months through August 1, 2007.  Dr. Turnbull completed a second Medical Assessment of Ability to do Work-Related Activities (Mental) on Stanley in September 2006 and found similar limitations in Stanley's ability to understand and remember short, simple instructions and make judgments on simple work-

---

[1]  The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning, whereas scores between 41 and 50 represent serious symptoms or serious impairment in social, occupational, or school functioning. See Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994).

related decisions.  Dr. Turnbull also found that Stanley was severely limited in his ability to interact with the public, supervisors, and co-workers.

A 2007 testing evaluation conducted by Dr. Spangler largely comported with the results of similar 2004 administrations.  Dr. Spangler tested Stanley by applying the Wechsler Adult Intelligence Scale-Third Edition test, revealing borderline intellectual functioning and scores as follows: a verbal IQ score of 74, a performance IQ score of 85, and a full scale IQ of 77.  Dr. Spangler diagnosed Stanley with major depressive disorder and anxiety disorder, coupled with low borderline intelligence, functional illiteracy, marginal education and math skills and personality disorder.  In his completion of a Medical Assessment of Ability to do Work-Related Activities (Mental), Dr. Spangler opined that Stanley retained no useful ability to deal with work stresses or demonstrate reliability, and that Stanley was seriously limited in his ability to relate to co-workers, the public, use judgment, or act appropriately in social situations.  Dr. Spangler found Stanley unable to manage benefits in his own best interest and that Stanley's impairments would cause him to miss more than two days of work a month.

In June 2006 and January 2007, state agency physicians reviewed the evidence of record and found that Stanley was capable of medium exertion work. In July 2007, state agency psychologist E. Hugh Tenison, Ph.D., reviewed Stanley's mental health records and found that Stanley's impairments, including

his borderline intellectual functioning, resulted only in mild restrictions in his daily living activities and social functions. Dr. Tenison found moderate limitations in Stanley's ability to maintain concentration, persistence, and pace, but no periods of decompensation. Dr. Tenison opined that Stanley could "meet the basic mental demands of competitive work on a sustained basis despite the limitations" from his impairments. (R. at 260.) A second review of Stanley's mental health records in January 2007 largely confirmed Dr. Tenison's findings.

After reviewing Stanley's records, the ALJ determined that Stanley had severe impairments of hypertension, obesity, depressive disorder, and borderline intellectual functioning, but that none of these conditions, either alone or in combination, met or medically equaled a listed impairment. Taking into account Stanley's limitations, the ALJ determined that Stanley retained the residual functional capacity to perform medium exertion work, provided that it took into account the additional mental limitations identified by Stanley's doctors. The ALJ also noted that Stanley's mental impairments further limited him to simple, repetitive jobs requiring minimal public or co-worker interaction. The VE testified that someone with Stanley's residual functional capacity could perform his past work as an assembler, or more limited occupations such as a cleaner, ground maintenance worker, food prep worker, sorter, laundry worker, non-farm animal care, street vendor, attendant, or dishwasher. According to the VE, there are

approximately 83,000 such jobs in the national economy. Relying on this testimony, the ALJ concluded that Stanley was able to perform work that existed in significant numbers in the national economy and was therefore not disabled under the Act.

Following the ALJ's unfavorable decision, Stanley requested review by the Appeals Council, which was denied. Stanley argues the ALJ's decision is not supported by substantial evidence because Stanley's impairments equal that of mental retardation under the Act's definition and because the ALJ erred in his assessment of Stanley's residual functional capacity. For the reasons below, I disagree.

### III

A plaintiff bears the burden of proving that she is under a disability. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). The standard for disability is strict. A plaintiff must show that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C.A. § 423(d)(2)(A).

In assessing DBI and SSI claims, the Commissioner applies a five-step sequential evaluation process. The Commissioner considers whether the claimant: (1) has worked during the alleged period of disability; (2) has a severe impairment; (3) has a condition that meets or equals the severity of a listed impairment; (4) could return to her past relevant work; and (5) if not, whether she could perform other work present in the national economy. *See* 20 C.F.R. §§ 404.1520(a) (4), 416.920(a) (4) (2009). If it is determined at any point in the five-step analysis that the claimant is not disabled, the inquiry immediately ceases. *Id.*; *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The fourth and fifth steps of the inquiry require an assessment of the claimant's residual functional capacity, which is then compared with the physical and mental demands of the claimant's past relevant work and of other work present in the national economy. *Id.* at 869.

In accordance with the Act, I must uphold the Commissioner's findings if substantial evidence supports them and the findings were reached through application of the correct legal standard. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is the

role of the ALJ to resolve evidentiary conflicts, including inconsistencies in the evidence. *Seacrist v. Weinberger*, 538 F.2d 1054, 1956-57 (4th Cir. 1976). It is not the role of this court to substitute its judgment for that of the Commissioner. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

Stanley's current appeal focuses on his mental condition. He argues that the ALJ's decision was not supported by substantial evidence because the ALJ erred by failing to find that Stanley's conditions equaled the requirements of the mental retardation listing, Listing 12.05(C). *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(C) (2010).

In order for Stanley to prevail, he must show that his impairments medically equal in severity *all* the criteria of a listed impairment. 20 C.F.R. §§ 404.1526, 416.926 (2010); *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* at 530. Furthermore, a diagnosis alone is insufficient to establish medical equivalence with a listed impairment. *See* 20 C.F.R. §§ 404.1525(d), 416.925(d) (2010). Finally, a claimant must typically meet the criteria outlined in the listing's introductory paragraph, as well as any durational requirements. *See* §§404.1525(c)(3), 416.925(c)(3) (2010).

Listing 12.05(C) states, "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning

initially manifested during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Subsection 12.05(C) further outlines that the claimant must demonstrate, "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.

For purposes of this appeal, the relevant evidence concerns the record as developed after April 28, 2006. In determining that Stanley's impairments did not equal Listing 12.05(C), the ALJ considered the findings of the state agency reviewing consultants and Stanley's treating sources regarding his mental condition. The ALJ rejected Dr. Spangler's 2006 and 2007 evaluations as too restrictive and inconsistent with the remaining documentary evidence, while crediting the opinions of the state agency consultants. The ALJ additionally considered the records from SCMHC and Dr. Turnbull's assessments from this period, but rejected Dr. Turnbull's limitations as inconsistent with his own narrative reports, the remaining treatment notes, and the documentary evidence. The ALJ found that Stanley's impairments did not meet any of the listed impairments, and specifically addressed those of Listing 12.05(C). The ALJ relied heavily on the evidence that Stanley's IQ scores were consistently above 70, and

never fell below the 60 to 70 range outlined under the agency listing. The ALJ noted that Stanley's allegations of disabling pain and other symptoms were not credible or supported by the documentary evidence. While the ALJ credited evidence showing that Stanley does suffer from physical and mental impairments, he also held that "the evidence suggests that the claimant is limited but is able to perform at least some type of work activity and, in this case, work of a medium exertional level." (R. at 19.)

I find that substantial evidence supports the ALJ's conclusion. First, I note that the current appeal relies on a record that is substantially the same as the one developed at the time of Stanley's last appeal. Dr. Spangler and Dr. Turnbull's latest testing results are the most substantive updates to Stanley's medical records since that time. I credit the ALJ's determination that these doctors, as well as Stanley's prior treating sources, all found Stanley to be of borderline intellectual functioning and that no test has actually diagnosed Stanley as mentally retarded. Despite Dr. Spangler's statement that "[t]here is no functional difference between a [verbal] IQ score of 74 and one of 70," this statement does not meet the requirements of 12.05(C). I agree with the ALJ's assessment that, while Stanley's capabilities may indeed be limited, they do not wholly preclude him from performing work that takes into account his abilities and his limitations.

## IV

Stanley also argues that there is a lack of substantial evidence because the ALJ erred in his assessment of Stanley's residual functional capacity. Stanley argues that the ALJ reached a less restrictive residual functional capacity assessment than that of the previous ALJ who also found Stanley not disabled. Contrary to these assertions, the ALJ's present residual functional capacity assessment, while perhaps lacking detail, did properly account for Stanley's limitations and was not less restrictive than the prior issued assessment. The ALJ specifically referenced the findings of B. Wayne Lanthorn, Ph.D, the psychologist who provided the most limited functional assessment of Stanley for purposes of his last appeal and that was credited in that decision. The ALJ noted that the limitations imposed by Dr. Lanthorn sufficiently addressed Stanley's impairments, and though not describing those limitations in detail, adopted them for the purposes of the present residual functional assessment. Thus, I find that this latest residual functional assessment is substantially the same as the one issued in 2007 and is likewise supported by the current evidence.

## V

For the foregoing reasons, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted. A

final judgment will be entered affirming the Commissioner's final decision denying benefits.

DATED:   April 18, 2011

/s/  James P. Jones
United States District Judge